**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TARRANCE BATTLE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1110-CR-946 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G20-1101-FA-3674

**July 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Tarrance Battle appeals his conviction of Possession of Cocaine,[1] a class A felony, presenting the following restated issues for review:

1. Did the trial court err in failing to instruct the jury on a defense involving mitigating circumstances by which Battle's offense could be reduced from an A felony to a C felony?

2. Is the evidence sufficient to support the enhancement of Battle's offense to an A felony?

We affirm.

The facts favorable to the conviction are that on January 17, 2011, Detective Sergeant David Spurgeon of the Indianapolis Metropolitan Police Department (IMPD) arranged a heroin deal using a confidential informant (C.I.). Sgt. Spurgeon searched the C.I. and gave him $80.00 in marked money to make the purchase. Standing near the intersection of Haugh Street and Saint Clair, the C.I. unsuccessfully attempted to telephone the target of the investigation. While he was there, a silver Dodge Stratus with two occupants pulled to a stop in front of the C.I. The driver of the Stratus was later identified as Marquan Lee. After briefly chatting with the two men in the vehicle and expressing a desire to purchase drugs, the C.I. got in and Lee drove away. IMPD Detective Andrew Deddish followed. After dropping off the other person in the vehicle at some point, Lee drove to 2817 Walnut Street, a housing unit in the Concorde Eagle Creek Homes (Concorde Homes) complex. Concorde Homes was a public housing complex populated largely by families with children.

---

[1] Ind. Code Ann. § 35-48-4-6 (West, Westlaw through legislation effective May 31, 2012).

Lee drove to the unit at 2817 Walnut because he believed that Battle had a supply of drugs for sale and would be at the residence. While Detective David Spurgeon and Detective Deddish watched, Lee got out of his car, walked up to the front door of the unit at 2817, knocked, and entered. Lee informed Battle, who was indeed present in the home, he needed drugs to sell to the person in his car. Battle retrieved crack cocaine and gave it to Lee. Lee returned to his car three to five minutes after he had left it and sold the crack cocaine to the C.I. for $80. The C.I. left the scene on foot and soon thereafter gave the substance he purchased from Lee to Detective Spurgeon. Lee re-entered the unit at 2817 Walnut and gave Battle $40. The two men then decided to drive to a liquor store. Detective Spurgeon radioed for uniformed police officers to stop Lee's vehicle because of the occupants' involvement in a drug transaction.

A short time later, IMPD Officers Andrew Trittipo and Kevin Neathery stopped Lee's vehicle while in their marked police cars at or near the intersection of 14th and Holmes Streets. Officer Trittipo removed Lee from the vehicle and handcuffed him. Meanwhile, Officer Neathery approached Battle, who was still sitting in the car. The officer drew his gun and ordered Battle to show his hands and get out of the car. Battle did not comply, but instead remained seated and stared forward, holding a beverage in his left hand, with his right hand balled up and sitting on his right leg. After the officer for a third time demanded that Battle show his hands, Battle raised his right hand, which was balled up "as if he was holding something", and put something in his mouth. *Transcript* at 54. To Officer Neathery, "it appeared to be a light substance in a plastic baggie[.]" *Id*. Almost immediately, the officer pulled Battle out of the car and placed him on the ground. He ordered Battle to spit out

whatever was in his mouth. After a few seconds, Battle complied. Officer Neathery observed that "it was a white substance, rock-like substance in a clear plastic baggie." *Id*. at 55. The rocks found in the baggie were subsequently tested and determined to contain 3.9678 and .3087 grams of cocaine, respectively.

Battle was charged with dealing in cocaine with intent to deliver and possession of cocaine within one thousand feet of a family housing complex, both as class A felonies. He was convicted of the latter charge and sentenced to thirty-two years, with ten years suspended and two years probation.

1.

I.C. § 35-48-4-16(b) (West, Westlaw through legislation effective May 31, 2012) provides:

> (b) It is a defense for a person charged under this chapter with an offense that contains an element listed in subsection (a) that:
>
> > (1) a person was briefly in, on, or within one thousand (1,000) feet of school property, a public park, a family housing complex, or a youth program center; and
> >
> > (2) no person under eighteen (18) years of age at least three (3) years junior to the person was in, on, or within one thousand (1,000) feet of the school property, public park, family housing complex, or youth program center at the time of the offense.

Battle contends the trial court erred in failing to instruct the jury concerning the foregoing defense, by which Battle's offense could have been reduced from an A felony to a C felony.

"The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Overstreet v. State,* 783 N.E.2d 1140, 1163 (Ind. 2003), *cert.*

*denied,* 540 U.S. 1150 (2004). Instruction of the jury is generally committed to the trial court's discretion and is reviewed only for an abuse of that discretion. *Overstreet v. State,* 783 N.E.2d 1140. During closing argument, Battle's counsel began to describe the defense set out in I.C. § 35-48-4-16 when the State interrupted and asked to approach the bench, as reflected in the following:

| | |
|---|---|
| [Defense counsel]: | Indiana law provides for the defense to possession within a thousand feet of a protected zone. In this case --- |
| [the State]: | Approach Judge --- |
| The Court: | Approach. |
| [the State]: | There's not a jury instruction given --- |
| [Defense counsel]: | I don't have to have a jury instruction to read sound law. |
| The Court: | To read what? |
| [Defense counsel]: | I am going to read the thousand foot defense. |
| The Court: | No, you're not. |
| [Defense counsel]: | Why not? |
| The court: | Because there's no instruction on that. |
| [Defense counsel]: | I don't have to have an instruction to read sound law. |
| The Court: | You do to create a defense. I'm not going to let you present a defense if you haven't asked for an instruction on it. I found that that [sic] it isn't a defense that should be given in this case. Objection sustained. |

*Transcript* at 267-68.

A defendant who fails to tender an instruction at trial waives a claim of error on appeal based upon its omission. *White v. State*, 687 N.E.2d 178 (Ind. 1997). Battle's counsel

5

did not tender an instruction concerning the defense set out in I.C. § 35-48-4-16, nor did he object to its omission. Yet, he contends that his attempt to argue along those lines during closing argument "could be construed as a request to modify the Instructions to more fully present an accurate statement of the applicable law." *Appellant's Brief* at 12.

Just moments before final arguments, the trial court discussed the final instructions with counsel. After addressing and resolving several instructional issues, the trial court asked, "Anything else beside that that we need to cover?" *Transcript* at 246. Battle's counsel responded, "Not from the Defense, Your Honor." *Id.* The court then brought up the verdict forms it would present to the jury. After the court and the parties agreed on the verdict forms, the court asked, "All right, everybody's reviewed the instructions and verdict forms and they are okay." *Id.* at 249. Defense counsel responded, "Yes, Judge." *Id.* We reject the claim that defense counsel's attempt to discuss the defense during final argument represented an attempt to accomplish obliquely what he expressly declined to accomplish moments before in a straightforward manner. His failure to request an instruction on the thousand-foot defense preserved nothing for appeal. *Williams v. State*, 771 N.E.2d 70 (Ind. 2002). The issue is waived.

2.

Battle contends the evidence is not sufficient to support the enhancement of his offense to an A felony. Essentially, Battle contends the State failed to prove that the thousand-foot defense does not apply. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

When reviewing a claim that the evidence introduced at trial was insufficient

6

to support a conviction, we consider only the probative evidence and reasonable inferences that support the trial court's finding of guilt. We likewise consider conflicting evidence in the light most favorable to the trial court's finding. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. Instead, we will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt.

*Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). When considering a challenge to the evidence, we neither reweigh the evidence nor assess the credibility of witnesses. *Turner v. State*, 953 N.E.2d 1039 (Ind. 2011).

Assuming, without deciding, that the State was *required* to prove that the thousand-foot defense does not apply, we conclude that it did so. Lee traveled to 2817 Walnut because he had no drugs and believed that Battle would have drugs to sell at that location. The evidence showed that Battle was located in a house in the Concorde Homes complex when the drug transaction took place.

After the transaction with the C.I. was completed and Lee and Battle left the scene, Lee's vehicle was stopped a short time later. During the stop, Battle was found in possession of 3.9678 grams of cocaine. The circumstances under which the stop was made permitted a reasonable inference that Battle had been in possession of the cocaine before Lee arrived at the Concorde Homes residence to purchase drugs. Latonya Harris, the property manager at Concorde Homes, testified that Concorde Homes is a "public housing community" consisting of 175 units. *Transcript* at 72. She testified that families, seniors, and single people live there, and that the majority consists of family units. Finally, she estimated that between one hundred and two hundred children lived there.

Our Supreme Court has determined that "'briefly,' as used in the statutory

7

enhancement defense, [means] a period of time no longer than reasonably necessary for a defendant's intrusion into the proscribed zone principally for conduct unrelated to unlawful drug activities, provided that the defendant's activities related to the charged offense are not visible." *Griffin v. State*, 925 N.E.2d 344, 349-50 (Ind. 2010). Lee testified that he drove to 2817 Walnut because he knew Battle would probably be there, and that Battle would have a supply of drugs for sale. After Lee entered the house, he and Battle remained inside for approximately five minutes, during which time Battle gave Lee a quantity of cocaine. Lee exited the house and gave the cocaine to the C.I. in exchange for eighty dollars in buy money. Lee returned to the house and, once inside, gave Battle forty dollars of the buy money. After eight to ten minutes, Lee and Battle exited the house and drove away. This evidence shows that Battle was present at the scene of the transaction for at least thirteen to fifteen minutes, and almost certainly longer. Moreover, his presence was for a period longer than was reasonably necessary for his intrusion into that zone, in that there was evidence that Battle frequented that house and appears to have been present for some period of time at 2817 Walnut when Lee encountered him there. Finally, the evidence permits a reasonable inference that while at the house at 2817 Walnut, Battle possessed the cocaine seized from him when Lee's car was stopped.

The State presented sufficient evidence to show that Battle possessed at least three grams of cocaine with one thousand feet of a public housing complex at which children were present, and that he was there with the cocaine more than briefly. Thus, the evidence was sufficient to rebut the thousand-foot defense.

Judgment affirmed.

8

MAY, J., and BARNES, J., concur.